**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TIALEA GRIGGS and MARIA DEL CONSUELO DE ANDA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

LIV ENTERPRISES, INC. and LUKA IVANO,

Defendant.

Case No. 23-cv-02089

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

Plaintiffs' motion for class certification, [155], is denied.

## BACKGROUND

Defendants, LIV Enterprises Inc. and its CEO Luka Ivano, provide freight delivery services throughout the United States. [155] at 4. The company employs hundreds of truck drivers. [12] ¶¶ 14, 22. Plaintiffs, who purport to represent proposed classes of drivers, allege the company misclassified them as independent contractors rather than employees. [12] ¶ 16. They further allege that the company illegally took deductions from their paychecks and illegally failed to reimburse them.

As part of delivering cargo throughout the United States, the company needed drivers to drive its trucks. [155-2] at 4–12. Becoming a driver was not easy. Applicants had to undergo extensive background checks and drug testing. *See id.* at [155-3] ¶ 4, [155-4] ¶ 4, [155-5] ¶ 4, [155-6] ¶ 4, [155-7] ¶ 4. After starting, drivers worked hand-in-hand with company dispatchers, communicated with company employees about deliveries, and dropped off paperwork at the headquarters. *See id.* at [155-3] ¶ 7, [155-4] ¶ 7, [155-5] ¶ 7, [155-6] ¶ 7, [155-7] ¶ 8, [155-8] ¶ 8. The trucks they drove had the company's logo and were registered under its Department of Transportation number. *See id.* at [155-3] ¶ 5, [155-4] ¶ 5, [155-5] ¶ 5, [155-6] ¶ 5, [155-7] ¶ 5, [155-8] ¶ 6.

Before they could start driving, the plaintiffs had to sign a standardized agreement that said they were independent contractors and not employees. *See id.* at 4. This classification, plaintiffs argue, violated Illinois law requiring them to be classified as employees, not independent contractors. They allege that if they had been correctly categorized, the company would not have been able to take deductions out of their paychecks. There were 16 types of deductions: including "truck rental payment," "physical damage insurance," "electronic log device" service, "damage to cargo," and many more. [177-1] ¶¶ 8-9. Drivers were also expected to pay out-of-pocket for repairs to their trucks and the equipment in them without being reimbursed. *See, e.g.*, [155-3] ¶ 10, [155-4] ¶ 10, [155-5] ¶ 13, [155-6] ¶ 9, [155-7] ¶ 12, [155-8] ¶ 10.

**Class Definitions and Claims**

Plaintiffs propose a class "consisting of all individuals who entered into a contract with LIV to perform delivery services; who personally made deliveries for LIV full-time between January 2021 and the present and who were classified as independent contractors." [155] at 2. Plaintiffs claim that defendants violated the Illinois Wage Payment and Collection Act (IWPCA) by classifying the drivers as independent contractors. First, they allege that defendants took illegal deductions from plaintiffs because they were employees. Second, they claim that defendants failed to reimburse plaintiffs for certain expenses.

**Class Representative**

Tialea Griggs seeks to represent the class. Griggs, a resident of North Carolina, made deliveries for the company from November of 2022 until March 2023. She claims the company fined her for late deliveries and reduced her pay to cover certain expenses. [155-3] ¶ 9. Maria Del Consuelo De Anda originally sought to represent the class as well, but has passed away. [194] at 8.

## LEGAL STANDARD

## I. Class certification

When class certification is sought pursuant to Rule 23(b)(3), like it is here, "proponents of the class must show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th

Cir. 2010)). "Rule 23 does not set forth a mere pleading standard." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (quotation marks omitted) (quoting *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)). Rather, "[p]laintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements." *Messner*, 669 F.3d at 811. As such, when reviewing a motion for class certification, a court "may not simply assume the truth of the matters as asserted by the plaintiff[s]," but instead must receive evidence and resolve factual disputes as necessary to decide whether certification is appropriate. *Id.* (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)).

Although "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, considerations bearing on class certification often overlap with issues underlying the merits of the plaintiffs' claims. *See Wal-Mart*, 564 U.S. at 351; *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599 (7th Cir. 1993) ("We have noted that the boundary between a class determination and the merits may not always be easily discernible." (quotation marks and citation omitted)). A court must accordingly "make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo*, 249 F.3d at 676).

## DISCUSSION

Clearing the Rule 23(a) hurdles is not enough to require certification because the plaintiffs brought their claim under Rule 23(b)(3). Here, they fail that test because individualized questions about deductions and reimbursements predominate the common question of whether defendants mischaracterized plaintiffs as independent contractors.

Under Rule 23(b)(3), courts ask whether "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "While similar to Rule 23(a)'s requirements for typicality and commonality, the predominance criterion is far more demanding." *Messner*, 669 F.3d at 814 (citation and quotation marks omitted).

The court must evaluate "the evidence pragmatically . . . [to] decide whether classwide resolution would substantially advance the case."

*Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citation omitted). That decision requires "understand[ing] what the plaintiffs will need to prove" and then "evaluat[ing] the extent to which they can prove their case with common evidence." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020).

To decide whether common issues predominate, the court "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). They may show that "common questions of law and fact relevant to liability" will "generate significant efficiencies" and that deciding any "remaining individual question[s] is manageable." *Svoboda v. Amazon.com, Inc.*, 168 F.4th 956, 964 (7th Cir. 2026).

In this case, plaintiffs must prove more than the fact that defendants misclassified the drivers as independent contractors. *See Enger v. Chi. Carriage Cab Co.*, 77 F. Supp. 3d 712, 716–17 (N.D. Ill. 2014). They must also show that defendants violated the law by either taking unlawful deductions from the plaintiffs or not reimbursing covered expenses. *See* 820 ILCS 115/9 (deductions); 820 ILCS 115/9.5 (reimbursements).

Factual questions about deductions are varied enough to make trial unmanageable. The IWPCA only allows "deductions" in a few limited circumstances, including, among others, if they are "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9. Defendants mostly focus on the authorization exception.

Different drivers had different views about what they authorized. Griggs testified that she agreed to some deductions as they came up, the ones for occupational-insurance and escrow payments, but not to others, including the electronic logging service deduction. [155-16] at 23, 27, 28, 36. Thomas Hallman, by contrast, testified that he agreed to the toll and permit deductions, among others, [187] at 34–35, but not the escrow deduction. [187] at 17. Michael Taul identified still another combination of challenged deductions—escrow and a particular trailer-repair expense. [188] at 35. Robert Horton's testimony about how his deductions varied weekly further shows the changing and contingent nature of the deductions. [155-12] at 17.

This testimony mentions a wide range of challenged deductions. At a high level of generality, two categories of deductions exist. Some

are recurring, like the $50 occupational accident insurance charge, [155-17] at 11, while some depend on triggering events such as damage to the truck or a regulatory fine. [155-17] at 10. Some recurring deductions, such as the $50 occupational accident insurance charge, could potentially be resolved with common evidence if the independent contractor agreement satisfies Illinois law. *See* 56 Ill. Admin. Code § 300.720(b) (2014) (distinguishing between recurring deductions "for the same amount" that can be authorized by a preexisting agreement and variable deductions that cannot). Other, one-time deductions, in contrast, could not be resolved with common evidence. *See Niiranen v. Carrier One, Inc.*, No. 20-CV-06781, 2025 WL 885701, at *19 (N.D. Ill. Mar. 22, 2025) (explaining that "ongoing deductions" are evaluated differently than one-off deductions). Instead, the factfinder would need to decide whether a driver authorized a particular deduction, like toll charges or truck repairs, consistent with Illinois law. *See Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 738 (7th Cir. 2011). For each deduction, the court would have to conduct a mini trial. *See Svoboda*, 168 F.4th at 964–65.

Cash advances present similar issues. According to the contract, plaintiffs could receive a cash advance that would be deducted later from their pay. [155-17] at 16. An advance could pay for expenses like repairs and lodging. [187] at 25, 72. Determining whether a particular driver agreed to a particular deduction at the time it was made would require evidence specific to that driver at the time of the agreement. *See* 56 Ill. Admin. Code § 300.720(a) ("In the case of cash advances, *the agreement* may be made either at the time of the deduction or at the time of the advance itself." (emphasis added)). For example, one of the drivers testified that he did not remember whether he approved a cash advance. [155-12] at 17. But he did remember that company policy required requesting a cash advance in advance. *See id.* The factfinder would need to answer particular questions about whether each driver received a cash advance and whether he or she authorized it.

The factfinder also would have to resolve whether each deduction was for the benefit of each driver. *See Johnson v. Diakon Logistics*, No. 16 C 6776, 2025 WL 964939, at *11–12 (N.D. Ill. Mar. 31, 2025) (holding that deductions for liability insurance and truck rentals were permissible because they were made for the drivers' benefit). The record indicates a wide range of deductions for everything from "[r]egistration" to insurance to "ELD Service" to tolls. [177-1] ¶¶ 8–9. It is not clear, based on plaintiffs' evidence, that these deductions share benefits in common.

Questions about reimbursement are similarly inappropriate for one trial. The standardized contract required drivers to cover the costs of "licenses, permits, cab cards, vehicle identification stamps," and to "furnish all necessary oil, fuel, tires, and other parts, supplies and equipment necessary or required for the safe and efficient operation and maintenance of the Equipment." [155-17] at 3. To successfully sue for a reimbursement, the driver would have to show they submitted the reimbursement claims "within 30 calendar days after incurring the expense," that the expense was reasonable, and that they were "necessary expenditures or losses." 820 ILCS 115/9.5. Some drivers submitted reimbursement requests, and others, including Horton and Griggs, did not. [155-12] at 14–15, [155-16] at 22–26. To group all drivers together would make for a confusing trial.

Even with the right paperwork filled out, Illinois law requires determining whether a particular expense was the kind of necessary expenditure that the employer should cover. *See* 820 ILCS 115/9.5. For example, a necessary repair might be treated differently than an optional upgrade. To group these reimbursements together would be more confusing still.

The question of misclassification does not predominate over these other questions. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018) (explaining that predominance requires weighing the "relative importance" of issues). The court would have to proceed driver-by-driver, deduction-by-deduction, reimbursement-by-reimbursement, because plaintiffs have not identified a common source of evidence for many of these questions. The text of the standardized agreement, at least, comes nowhere close. *See Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 844 (7th Cir. 2022) (explaining that questions of "consent" are "likely to vary from recipient to recipient" (citation omitted)). It is plaintiffs' burden to show that the trial would not be about "the details of each . . . individual transaction[]." *Lady Di's,* 654 F.3d at 738.

This conclusion aligns with Seventh Circuit precedent. In *Gorss Motels*, the Seventh Circuit held that a potential class who claimed they had been sent faxes in violation of the Telephone Consumer Protection Act failed the predominance requirement because there were individualized questions about whether each member of the proposed class had consented to the faxes. *See Gorss Motels*, 29 F.4th at 844–45. The defendant had obtained fax information from a variety of sources, including verbal consent and franchise agreements. *See id.* The wide range of sources meant the factfinder would have needed to determine how each class member's number was obtained and whether the

member had given permission. *See id.* The Seventh Circuit concluded this "method of determining the answer" was too cumbersome to be manageable. *Id.* at 845. Similarly, in *Riffey v. Rauner*, 910 F.3d 314 (7th Cir. 2018), the Court found that predominance was not met because even though plaintiffs shared a similar legal theory, there were individual questions about whether each plaintiff supported the union and had experienced injury. *See id.* The Court concluded that these "highly individualized" inquiries defeated predominance. *Id.* at 319.

Plaintiffs frame the dispute differently. They think these individualized questions are about damages, not liability. *See, e.g.*, *Johnson v. Diakon Logistics*, No. 16-CV-06776, 2020 WL 405636, at *7 (N.D. Ill. Jan. 23, 2020). But that framing misunderstands what the IWPCA requires.

To be sure, the IWPCA applies only to employees. But the statute does not make the company liable merely for misclassification. The statute has specific requirements. *See* 820 ILCS 115/9 (deductions); 820 ILCS 115/9.5 (reimbursements). Without violating one, a company is not liable. For example, a company is not liable to a driver who was misclassified as an independent contractor, but who never had any money deducted or incurred a reimbursable expense. *See Enger*, 77 F. Supp. 3d at 716–17; *Spates v. Roadrunner Transportation Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134, at *4 (N.D. Ill. Dec. 23, 2016) (explaining that under the IWPCA proving "that class members were employees is a necessary condition for Plaintiffs to prevail, but it is not a sufficient one").

Plaintiffs also point to several inapplicable district court cases. In each, there was a common policy, which meant liability could be determined for the whole class. In *Roman v. Triton Logistics, Inc.*, the plaintiff challenged standardized weekly escrow and occupational-accident-insurance deductions imposed on all drivers. *See* No. 23 CV 15146, 2025 WL 1134191, at *6 (N.D. Ill. Apr. 16, 2025). The Court concluded that it could decide whether those policies are legal from common evidence because one policy applied across the class. *See id.* Similarly, in *Rivers v. Southway Carriers, Inc.*, the Court determined "the lawfulness of" a particular agreement without answering individualized questions about deductions and reimbursements. No. 23 C 738, 2024 WL 579734, at *9 (N.D. Ill. Feb. 13, 2024). And finally, in *Spates v. Roadrunner Transportation Systems, Inc.*, the Court concluded that any disputes about deductions could be answered with common evidence because "[t]he IWPCA requires that deductions be authorized in writing," which meant standardized independent contractor

agreements could be used to evaluate all the deductions. No. 15 C 8723, 2016 WL 7426134, at *9 (N.D. Ill. Dec. 23, 2016).

This case raises similar questions at once—and more. [177-1] ¶¶ 8–9. Certainly, some of these deductions, like recurring insurance payments, could be determined using common evidence. But for many, like cash advances, there is no single source of evidence that could determine whether a deduction was "either lawful or unlawful as to all" class members. *Roman*, 2025 WL 1134191, at *6. A class action here would mean going driver by driver. [155-16] at 22-23.

Plaintiffs also point to several other cases in which a district court certified a class of drivers under the IWPCA. But none of those cases presented these kinds of individualized deductions and reimbursements issues. *See Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12-CV-5710, 2015 WL 13650775, at *15–16 (N.D. Ill. Mar. 13, 2015); *Thomas v. Matrix Corp. Servs.,* No. 10 C 5093, 2012 WL 3581298, at *3 (N.D. Ill. Aug. 17, 2012); *Prokhorov v. IIK Transp., Inc.*, No. 20 CV 6807, 2023 WL 2711599, at *9 (N.D. Ill. Mar. 30, 2023). These cases illustrate that the classification question can predominate, not that it always will.

The court finds that these issues cannot "be adequately managed with certain procedural devices." *Simer v. Rios*, 661 F.2d 655, 677 (7th Cir. 1981). Unlike questions about geographic location, many of the deduction and reimbursement issues cannot be resolved with common tools like "affidavits" or "geolocation data." *Svoboda*, 168 F.4th at 965. The ultimate difficulty is not the existence of individualized questions. Instead, it is that plaintiffs have not shown that common questions predominate, a "burden" they must carry "by a preponderance of evidence." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015).

The court acknowledges that certification would have some positive efficiencies. Determining employee status "would substantially advance the litigation." *Costello*, 810 F.3d at 1060. But predominance is about what litigation looks like after a common question is resolved. Here, complex and individualized questions about deductions and reimbursements would remain, without a common method of answering many of them. *See Gorss Motels*, 29 F.4th at 844–45.

## CONCLUSION

The motion for class certification, [155], is denied.

Dated: September 30, 2026 /s/ Martha M. Pacold